IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LESLIE GANTT,                           *
                                        *
        Plaintiff,                      *
                                        *
v.                                      *
                                        * CASE NO.: 2:06-cv-00468-VPM
ELI LILLY AND COMPANY, et al.           *
                                        *
Defendants.                             *

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO REMAND

COMES NOW the Plaintiff, Leslie Gantt, and hereby submits her brief in support of her Motion to Remand. Defendant, Eli Lilly and Company, has failed to establish that this Court has jurisdiction over this proceeding, and, as a result, the Plaintiff's Motion to Remand is due to be **GRANTED**, and this cause remanded back to the Circuit Court of Montgomery County, Alabama for the following reasons:

1.  This Court lacks subject matter jurisdiction. The Plaintiff and one of the named Defendants are citizens of Alabama. As such, complete diversity of jurisdiction is absent. Defendant Lilly has failed to establish that Defendant Yolanda McCain ("Individual Resident Defendant") was fraudulently joined as a party to this cause to defeat federal jurisdiction. Defendant has failed to establish that there is "no possibility" that the Plaintiff can prevail in state court against the Individual Resident Defendant. In fact, the allegations made against the Individual Resident Defendant are sufficiently pleaded under and supported by Alabama law. Further, the allegations set forth in Plaintiff's state court complaint adequately set forth factual and legal bases to support the claims against averred against the Individual Resident Defendant, and the stated allegations clearly indicate that the Individual Resident Defendant acted independently

1

and in concert with Defendant Lilly. Joint and several liability and alternative liability, contrary to the confusing arguments of Defendant Lilly, are well-recognized methods of pleading under Alabama law.

2. Legg v. Wyeth does not support the conclusion that joinder of the Individual Resident Defendant was fraudulent.

## I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

This product liability action arises from the injuries of Leslie Gantt as a result of taking the prescription drug Zyprexa® (olanzapine), a prescription drug designed to treat schizophrenia, bipolar mania, and other mental/mood conditions. As set forth in her state-court complaint, Ms. Gantt was prescribed and used Zyprexa® and as a result suffered the onset of diabetes mellitus. Ms. Gantt ingested the prescription medication Zyprexa® and the damages and injuries resulting from Ms. Gantt's use of the prescription medication Zyprexa® occurred in Montgomery County, Alabama. As a direct and proximate result of Ms. Gantt consuming Zyprexa®, she suffered injuries including the onset of diabetes mellitus, physical pain and suffering, emotional distress, and other damages as set forth in more detail in the state-court complaint.

Defendant Lilly, the Individual Resident Defendant, and/or the named fictitious defendants designed, manufactured, marketed, distributed, and/or sold Zyprexa®, despite knowing that Zyprexa® caused serious and potentially life-threatening side effects. The Defendants, jointly and severally, encouraged the use of Zyprexa® through an aggressive marketing campaign, including through its sales representatives detailing physicians, and through direct-to-consumer advertising. The direct-to-consumer advertising included advertisements on television and in major magazines and newspapers as well as direct

mail throughout Alabama. In addition, the Defendants misrepresented the effectiveness of Zyprexa® and concealed the known and serious side effects from physicians and from the consuming public, including Ms. Gantt. The Defendants knew of the defective and unreasonably dangerous nature of Zyprexa®, yet continued to design, manufacture, and sell Zyprexa® so as to maximize gross sales and profits in conscious disregard of the foreseeable harm to be caused by Zyprexa®. Though the Defendants were aware that Zyprexa® was unreasonably dangerous as designed, they failed to adequately test Zyprexa® and failed to warn the public of the drug's dangerous propensities. The Individual Resident Defendant or the sales representatives who detailed the prescribing physician in this cause were informed of the drug's dangerous propensities, but participated in the scheme to suppress and withhold this information from physicians and the consuming public. The sales representatives, in concert with Defendant Lilly, benefited by the suppression of this critical information by increasing the sales of the drug, which correspondingly increased commissions, bonuses and incentives earned from the sale of Zyprexa®. The Defendants also failed to provide Ms. Gantt with timely and adequate post-marketing warnings or instructions as additional information became available to the Defendants about the risks posed to those who ingested or would ingest Zyprexa®, including Ms. Gantt.

Furthermore, Defendants failed to exercise ordinary care and was negligent in the manufacture, marketing, sale, and testing of Zyprexa® as it placed the drug into the stream of commerce. Despite their knowledge that Zyprexa® caused serious side effects, the Defendants continued to market Zyprexa® to the public, including Ms. Gantt, when there were safer, alternative methods of treatment available.

Defendant Lilly also breached express and implied warranties made in relation to Zyprexa®. Both before Ms. Gantt was first prescribed Zyprexa® and during the period in which she ingested Zyprexa®, Defendant Lilly expressly warranted and represented that Zyprexa® was safe, and impliedly warranted that Zyprexa® was safe and fit for its intended, ordinary uses. The fact that Defendant Lilly was providing false information to the public about Zyprexa® was known or became known to the Individual Resident Defendant and other sales representatives of Defendant Lilly throughout this country, and the company sales representatives became active participants in this mass cover-up of critical safety information. Ms. Gantt and her prescribing physician reasonably relied upon the representations of the Defendants and relied upon the Defendants' superior knowledge as to the safety and fitness for the intended use of Zyprexa®. Contrary to the warranties and representations of the Defendants, Zyprexa® was not safe and could and did cause serious side effects and harm to those who took the drug, and accordingly was not fit for its intended, ordinary purpose. At the time the Defendants marketed, sold and distributed Zyprexa® for use by Ms. Gantt, the Defendants knew their representations about the safety of Zyprexa® were false, or they made those representations with reckless disregard for their falsity. The Defendants' wrongful acts or omissions were a contributing or proximate cause of Ms. Gantt's injuries.

On April 18, 2006, the Plaintiff filed suit in the Circuit Court of Montgomery County, Alabama. Plaintiff asserted various causes of action against the Defendants, including product liability under the AEMLD, negligence, breach of express warranty, breach of implied warranty, fraudulent suppression and concealment, and fraudulent misrepresentation.

On May 23, 2006, the Defendants filed a Notice of Removal with this Court. Plaintiff now urges this Court to remand this action to state court in accordance with 28 U.S.C. § 1447(c) and the authority referenced herein.

## II.    SUMMARY OF ARGUMENT

This case represents one of many attempts by Defendant Lilly to "manufacture" diversity jurisdiction, with total disregard for whether such jurisdiction actually exists. Lilly's contention that the Plaintiff has named the Individual Resident Defendant as a tactic to attempt to defeat diversity is an affront to Plaintiff's due process rights to seek relief from those who are responsible for Ms. Gantt's injuries in the forum of her choosing.

This and other federal District Courts in the Eleventh Circuit have repeatedly rejected the frivolous attempts by Pharmaceutical Defendants to remove validly pleaded cases from state to federal court. See, e.g., Irvin v. Merck & Co., Inc., et al, Case No. 03-80514-cv-Hurley (S.D. Fla. Oct. 9, 2003); Turner v. Merck & Co., Inc., et al, Case No. 2:05cv702-T (M.D. Ala. Sept. 21, 2005); Struthers v. Merck & Co., Inc., et al., Case No. 2:06cv127-MHT (M.D. Ala. March 13, 2006); Leverett v. Merck & Co., Inc., et al., Case No. 3:06cv128-MHT (M.D. Ala March 15, 2006).[1]  Judge Myron Thompson in his remand orders in Struthers and Leverett, recently wrote:

> This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C. §§ 1332, 1441, is now before the court on plaintiff's motion to remand.  The Court agrees with plaintiff that this case should be remanded to state court.  First, there has not been fraudulent joinder of any resident defendant (that is, plaintiff has colorable claims against such a defendant), see Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883

---

[1] See Exhibit "A", attached and filed with this brief.  See also Exhibit "C" for other federal districts courts which have ruled accordingly in other pharmaceutical-related litigation.

F.2d 1553, 1561 (11th Cir. 1989).  Second, there has not been <u>fraudulent misjoinder</u> of any resident defendant (that is, plaintiff has reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), <u>see</u> <u>Tapscott v. MS Dealer Service Corp.</u>, 77 F.3d 1353, 1360 (11th Cir. 1996).

Judge Hurley, in his remand order in <u>Irvin</u>[2], likewise held the plaintiffs presented colorable claims that, if proven, would subject the in-state, sales representative defendants to liability.  These cases are indistinguishable from the present case.

The sole question before this Court is whether this action should be remanded as having been improvidently removed.  Removal is improper where complete diversity of citizenship is lacking.  In this case, the Plaintiff and the Individual Resident Defendant, as set forth in the state-court complaint, are residents of Alabama.  Thus, this Court would not have had original jurisdiction had Plaintiff chosen to prosecute this action in federal court.

Defendant Lilly has wholly failed to establish that the Plaintiff fraudulently joined the Individual Resident Defendant as a means to defeat diversity of citizenship.  The Plaintiff's Complaint alleges claims against all the Defendants that, if proven at trial, will sustain a jury verdict against all Defendants.  As averred and as set forth in more detail herein, the Individual Resident Defendant was an active participant in a scheme to mislead doctors and the consuming public about the dangers of the drug Zyprexa®.  Pursuant to Alabama law, the Individual Resident Defendant can be found liable for her active participation in a fraudulent scheme in this state.

### III.    STANDARD OF REVIEW

---

[2] The <u>Irvin</u> case was removed from and remanded back to state court and resulted in the court charging costs and attorneys' fees against Merck for its frivolous removals. <u>Irvin v. Merck Co., Inc.</u> Case No. 03-80514-cv-Hurley (S.D.Fla. Feb. 14, 2005). See Exhibit "B" attached and filed with this brief.

Pursuant to 28 U.S.C. § 1447(c), after a case has been removed to federal district court but "at any time before final judgment," the plaintiff may move for remand, and "the case *shall* be remanded [if] it appears that the district court lacks subject matter jurisdiction." (Emphasis added.) It is well settled that federal courts are courts of limited jurisdiction and are "empowered to hear only cases within the judicial power established by Article III of the United States as authorized by Congress. See University of South Alabama v. American Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999) (quoting Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994)). Because the statutes governing removal are jurisdictional, and because removal jurisdiction raises significant federalism concerns, removal statutes must be strictly construed in favor of state court jurisdiction and against removal. See Shamrock Oil & Gas v. Sheets, 313 U.S. 100, 108-09, 61 S. Ct. 868 (1941); University of South Alabama, 168 F.3d at 411; Clay v. Brown & Williamson Tobacco Corp., 77 F. Supp. 2d 1220, 1221 (M.D. Ala. 1999) (DeMent, J.).

"An action is not properly removable if it consists of a non-separable controversy involving both resident and nonresident defendants." Coker v. Amoco Oil Co., Inc., 709 F.2d 1433, 1439 (11th Cir. 1983). Thus, where a removing defendant asserts federal subject matter jurisdiction based on an amount in controversy over $75,000 and the diversity of citizenship of the parties, the defendant must show there is actually complete diversity; that is, every plaintiff must be diverse from every defendant. Triggs v. John Crum Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998) (citing Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1355 (11th Cir. 1996)).

In an action based upon a removal petition and a motion to remand, the defendant, as the removing party, bears the burden of establishing federal subject matter jurisdiction.

See Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1373 (11th Cir. 1998). Because federal courts are courts of limited jurisdiction, all doubts about federal subject matter jurisdiction on removal should be resolved in favor of remand to state court, University of South Alabama, 168 F.3d at 411; Pacheco de Perez, 139 F.3d at 1373; Seroyer v. Pfizer, Inc., 991 F. Supp. 1308, 1312 (M.D. Ala. 1997); and all questions of fact and controlling law should be resolved in favor of the plaintiff, Shamrock Oil, 313 U.S. at 108-09; University of South Alabama, 168 F.3d at 411. Accord Cope v. American Int'l Group, 2006 WL 317238 *1 (M.D. Ala. 2006) (Albritton, Senior J.) ("[T]he Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear.").

## IV.    ARGUMENT

### A.    Diversity jurisdiction does not exist.

Defendant Lilly does not dispute that complete diversity is missing on the face of Plaintiff's Complaint. Rather, Defendant Lilly, in contravention of the settled law of this State, contends that the citizenship of the Individual Resident Defendant should be disregarded on the ground that she was fraudulently joined. Defendant Lilly has failed to carry its burden on this issue and, thus, this cause is due to be remanded back to the Circuit Court of Montgomery County, Alabama.

### 1.    The standard for fraudulent joinder supports remand.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." Triggs, 154 F.3d at 1287. Arguments regarding fraudulent joinder fail if there is any possibility that a state court would find that the Complaint states a cause of action against a resident defendant. Id. at 1287. The

removing party bears the burden of establishing fraudulent joinder. <u>See</u> <u>Coker</u>, 709 F.2d at 1440; <u>see also</u>, <u>Pacheco de Perez</u>, 139 F.3d at 1380; <u>Cope</u> at * 2. That burden is a heavy one. <u>See</u> <u>Pacheco de Perez</u>, 139 F.3d at 1380; <u>Crowe v. Coleman</u>, 113 F.3d 1536, 1538 (11th Cir. 1997); <u>B., Inc. v. Miller Brewing Co.</u>, 663 F.2d 545, 549 (1981). To prove that a resident defendant has been fraudulently joined, the removing defendants must show either that "there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant in state court or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." <u>Coker</u>, 709 F.2d at 1440; <u>Pacheco de Perez</u>, 139 F.3d at 1380; <u>Crowe</u>, 113 F.3d at 1538. <u>See also</u> <u>Triggs v. John Crump Toyota</u>, 154 F.3d 1284, 1287 (11th Cir. 1998)(setting forth three occasions when fraudulent joinder may exist).

"While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),' the jurisdictional inquiry 'must not subsume substantive determination.'" <u>Crowe</u>, 113 F.3d at 1538 (quoting <u>B. Inc.</u>, 663 F.2d at 550)(citations omitted). "[T]he trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits." <u>Id.</u> (quoting <u>B., Inc.</u>, 663 F.2d a 548-49). "When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." <u>Crowe</u>, 113 F.3d at 1538. According to the Court in <u>Crowe</u>:

> In terms of this circuit's law, the main point for us is this one: For a plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all

reasonable inferences from the record in plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved."

Id. at 1541-42 (quoting B., Inc., 663 F.2d at 550).

Stated differently, "[i]n the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." Crowe, 113 F.3d at 1542. "Where there have been allegations of fraudulent joinder . . . the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham ... and is not fraudulent in fact or in law." B., Inc., 663 F.2d at 550 (quoting Bobby Jones Garden Apartments v. Suleski, 391 F.2d 172, 177 (5th Cir. 1968)).

## 2.    The resident defendant was not fraudulently joined.

Defendant Lilly has made no claim that Plaintiff fraudulently pleaded jurisdictional facts. Accordingly, this Court's inquiry is limited to determining whether there is a *possibility* that the state court might find, under Alabama law, that the Plaintiff has asserted valid claims against the resident defendant. See Triggs, 154 F.3d at 1287; Crowe, 113 F.3d at 1538. Where, as here, the Notice of Removal is filed before the Plaintiff has had full opportunity to develop her claims against the Individual Resident Defendant through discovery, Alabama federal courts have assessed those claims in accordance with the standard of Fed. R. Civ. P. 11. See, Clay, 77 F. Supp. 2d at 1224 (De Ment, J.); see also Sellers v. Foremost Ins. Co., 924 F. Supp. 1116, 1118-19 (M.D. Ala. 1996) (Thompson, J.). "[T]o block a fraudulent-joinder charge based on lack of evidence, a plaintiff who has not been able to engage in full discovery must be able to

10

provide some showing that her claim against the resident defendant has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Sellers, 924 F. Supp. at 1119. "[T]o block a fraudulent-joinder charge *based on lack of legal support*, a plaintiff need only show that her claim against a resident defendant is warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Id. at 1119 n. * (emphasis in original).

"If there is *a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court." Coker, 709 F.2d at 1440-41 (citing Davis v. GMC, 353 F. Supp.2d 1203, 1207 (M.D. Ala. 2005) (emphasis added). The Plaintiff is not required to have a winning case against a resident defendant, but only have a *possibility* of stating a valid cause of action in order to defeat arguments of fraudulent joinder. Triggs, 154 F.3d at 1287.

The Plaintiff has asserted valid claims under Alabama law against the Individual Resident Defendant.[3]

> a.    **The Plaintiff has stated valid product liability (AEMLD) claims against the Individual Resident Defendants.**

To establish a prima facie case under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), a plaintiff must demonstrate that:

> (1)    He suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

---

[3] Plaintiff does not contend that the Individual Resident Defendant is liable for the breaches of express and implied warranties in this cause, despite Defendant Lilly's assertion to the contrary.

(a)    the seller is engaged in the business of selling such a product, and

(b)    it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2)    Showing the above elements, a plaintiff has proved a prima facie case although

(a)    the seller has exercised all possible care in the preparation and sale of her product, and

(b)    the user or consumer has not bought the product from, or entered into any contractual relation with, the seller.

See Casrell v. Altec Industries, Inc., 335 So. 2d 128, 132-33 (Ala. 1976); Atkins v. American Motors Corp., 335 So. 2d 134, 141 (Ala. 1976).

It is well settled under Alabama law that employees of a company may be held liable for their active participation in the torts of the company. "[O]fficers and employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity." Ex parte Charles Bell Pontiac, 496 So. 2d at 775 (citing Candy H. v. Redemption Ranch, Inc., 563 F. Supp. 505, 513 (M.D. Ala. 1983)); see Clay v. Brown & Williamson Tobacco Corp., 77 F. Supp. 2d 1220, 1224 (M.D. Ala. 1999); see Seaborn v. R. J. Reynolds Tobacco Co., 1996 WL 943621 (M.D. Ala., Dec. 30, 1996) (NO. CIV. A. 96-T-1540-N).

In the case at bar, the Individual Resident Defendant aggressively marketed Zyprexa® to healthcare professionals, including Ms. Gantt's physician, by frequently calling on physicians, distributing samples to physicians to be given to patients, conducting educational seminars for physicians, and distributing sales literature to healthcare professionals and the consuming public. The Individual Resident Defendant,

12

in communications with physicians, compared the efficacy of Zyprexa® to other existing drugs, sought to distinguish Zyprexa® from other drugs already on the market, and worked to persuade physicians to prescribe Zyprexa® to their patients. The Individual Resident Defendant provided physicians with Zyprexa® product information. Throughout these activities, the Individual Resident Defendant worked to increase the sales of Zyprexa® and her own personal financial gain.

Defendant Lilly and the Individual Resident Defendant had far superior knowledge of the efficacy and safety profile of Zyprexa® over that of prescribing physicians and patients who took the drug. Ms. Gantt and her prescribing physician detrimentally relied on information provided by the Individual Resident Defendant. The Individual Resident Defendant provided false, fraudulent, incorrect, misleading and/or incomplete information (such as inadequate warnings of risks of harm and adverse effects from the use of Zyprexa®) to the prescribing physician, and the prescriber passed this erroneous information on to his patients, including Ms. Gantt. Ms. Gantt relied on such information through the representations of her physician. If these allegations are proven to be true, a finding of individual liability under AEMLD against the Individual Resident Defendant is more than a mere "possibility."

In <u>Clay</u> and <u>Seaborn</u>, *supra*, this Court found that, to the extent a manufacturer defendant allegedly violated AEMLD, "it acted through its employees; the company does not employ ghosts." <u>Clay</u>, 77 F. Supp. 2d at 1224; <u>Seaborn</u>, 1996 WL 943621, at *3. The Court allowed the plaintiffs to pursue the distributors and employee sales representatives individually -- even in the absence of any personal contact with the plaintiffs -- and to substitute new individual defendants in the event plaintiffs had named

the wrong individuals at the outset. Significantly, the Court noted that discovery might well establish that the individual in-state defendant might have had superior knowledge to others, which could establish his independent liability under the AEMLD.

Other United States District Courts have also consistently rejected arguments that in-state defendant sales representatives are fraudulently joined in the context of products liability actions, seeking damages as the result of a defective drug. See Barry Pace, et al. v Parke-Davis, No. 3:00-3046 (N.D. Ala. Nov. 21, 2000)(Johnson, J.); see also Donald McCaffery v. Warner-Lambert Co., et al., No. 4:00-2848 (N.D. Ala. Dec. 8, 2000) (Propst, J.); see also Acton v. R.J. Reynolds Tobacco Co., No. 96-C-2737-W (N.D. Ala. Oct. 23, 1996). And other United States District Courts have remanded pharmaceutical drug cases, such as the case at bar, to state courts or refused to stay the proceedings – perhaps, most notably, the Vioxx-related products liability cases. See, Landrum v. Merck & Co., Inc., et al., Case no. CV-05-01055-J (N.D. Ala. May 25, 2005) (holding that diversity jurisdiction was absent and remanding to state court, relying upon Marshand v.Wyeth, et al., CV-03-CO-319-5-W (N.D. Ala. 2004)); Sokarda, et al. v. Merck & Co., Inc., et al., Case no. SACV-05-177-JFW (MANX) (C.D. Calif. April 22, 2005) (holding that under California law, case should be remanded to state court based upon properly named in-state defendant); Amisch v. Merck Co., Inc., et al., Case no. 04-CV-847-DRH (S.D. Ill. Dec. 22, 2004) (holding that motion to stay pending JPML's ruling on motion to transfer should be denied and that forum court should address subject matter jurisdiction, and remanding case to state court because defendant failed to meet its burden to sustain removal); Brame v. Merck & Co., Inc., et al., Case no. 05-034-GPM (S.D. Ill. Feb. 17, 2005) (holding that defendant failed to meet its burden to establish fraudulent joinder,

refusing to stay proceedings pending ruling by JPML, and remanding case back to state court); McQuay v. Merck & Co., Inc., et al., Case No. 05-038-GPM (S.D. Ill. Feb. 17, 2005) (same); Tomlin v. Merck & Co., Inc., et al., Case no. 04-14335-CIV-Moore (S.D. Fla. Feb. 14, 2005) (holding that motion to stay pending JPML was inappropriate, holding that plaintiff adequately pleaded a claim against sales representative under Florida law, finding that there was no fraudulent joinder, and remanding the case back to state court).[4]

As Judge Ira DeMent wrote in Clay, 77 F. Supp. 2d at 1223, quoting de Perez, 139 F.3d at 1380-81 and Crowe, 113 F.3d at 1538, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." The question of whether drug sales representatives can be held liable under the AEMLD is "an arguable under state law." As a result, the Plaintiff has stated "possible" viable claims against the Individual Resident Defendant.

### b. The Plaintiff has alleged valid claims of fraud, fraudulent misrepresentation, fraudulent suppression and concealment against the Individual Resident Defendant.

Under Alabama law, in order to state a claim for fraud and fraudulent misrepresentation, a plaintiff must show that the defendant made a misrepresentation of material fact, that he made it willfully to deceive, recklessly, without knowledge, or mistakenly, that the misrepresentation was justifiably relied on by the plaintiff under the circumstances, and that the misrepresentation caused damage as a proximate consequence. Ala. Code § 6-5-101 (1975); Harrington v. Johnson-Rast & Hays Co., 577 So.2d 437 (Ala.1991). In the case at bar, Plaintiff alleges that Defendant Lilly and the

---

[4] See Exhibit "C", attached and filed with this Brief.

Individual Resident Defendant, together or separately, negligently, recklessly, intentionally and fraudulently made material misrepresentations that Zyprexa® was safe. The Individual Resident Defendant did so with the intent to induce physicians to prescribe and for consumers, including Ms. Gantt, to purchase Zyprexa®. Moreover, Plaintiff alleges that, at the time the Defendants made these representations, the Defendants were aware of the falsity of these representations and/or made these representations with reckless disregard to the truth. Plaintiff also alleges that she and her prescribing physician detrimentally relied upon the material misrepresentations and suppressions of the Defendants and, as a result, suffered serious injuries.

Defendant Lilly asserts in its Notice of Removal that claims of fraud cannot be maintained against the Individual Resident Defendant. District Courts in Alabama have repeatedly rejected similar fraudulent joinder claims in the context of fraudulent misrepresentation and suppression claims against pharmaceutical sales representatives and have remanded these cases to state court. See Floyd v. Wyeth, No. 03-C-2564-M (N.D. Ala. Oct. 20, 2003) (Clemon, J.); Crittenden v. Wyeth, No. 03-T-920-N (M.D. Ala. Nov. 21, 2003) (Thompson, J.); Terrell v. Wyeth, No. CV-03-BE-2876-S (N.D. Ala. Dec. 12, 2003) (Bowdre, J.) ("Although the plaintiffs' claims against defendant Parker appear to raise novel questions of Alabama state law, this court will not speculate that the plaintiffs have *no* possibility of establishing a cause of action against this non-diverse defendant. Little, if any, discovery has been done to-date in this case; thus, it would be premature for this court to make rash decisions regarding the nature and the timing of the injury sustained by the plaintiffs, or the employment history of defendant Parker. Nor can the court conclusively determine that plaintiffs would not be successful in urging its

various theories under Alabama law."); <u>Ballard v. Wyeth</u>, No. 03-T-1255-N (N.D. Ala. Jan. 23, 2004) (Thompson, J.); <u>Brunson v. Wyeth</u>, No. 03-T-1167-S (N.D. Ala. Jan. 23, 2004) (Thompson, J.); <u>Blair v. Wyeth</u>, No. 03-T-1251-S (N.D. Ala. Jan. 23, 2004) (Thompson, J.); <u>Storey v. Wyeth</u>, No. CV-04-BE-27-E (N.D. Ala. Jan. 30, 2004) (Bowdre, J.); <u>Cash v. Wyeth</u>, No. 03-RRA-3378-E (N.D. Ala. Feb. 3, 2004) (Armstrong, Mag. J.); <u>Marshal v. Wyeth</u>, No. CV-04-TMP-179-S (N.D. Ala. Feb. 18, 2004) (Putnam, Mag. J.); <u>McGowan v. Wyeth</u>, No. CV-04-TMP-298-S (N.D. Ala. Feb. 24, 2004) (Putnam, Mag. J.); <u>Johnson v. Wyeth</u>, No. CV-04-TMP-224-S (N.D. Ala. Feb. 23, 2004) (Putnam, Mag. J.); <u>Bradford v. Wyeth</u>, No. 03-P-3157-5 (N.D. Ala. Feb. 27, 2004) (Proctor, J.); <u>Smith v. Wyeth</u>, No. 04-P-226-M (N.D. Ala. Feb. 27, 2004) (Proctor, J.); <u>Boudreaux v. Wyeth</u>, No. CV-04-P-227-M (N.D. Ala. Feb. 27, 2004) (Proctor, J.); <u>Bridges v. Wyeth</u>, No. 04-AR-0297-J (N.D. Ala. Mar. 2, 2004) (Acker, J.); <u>Hough v. Wyeth</u>, No. 04-H-393-S (N.D. Ala. Mar. 5, 2004) (Hancock, J.); <u>Brogden v. Wyeth</u>, No. 04-T-068-S (M.D. Ala. Mar. 8, 2004) (Thompson, J.); <u>Reeder v. Wyeth</u>, No. 04-T-066-N (M.D. Ala. Mar. 8, 2004) (Thompson, J.); <u>Eaton v. Wyeth</u>, No. CV-04-P-380-M (N.D. Ala. Mar. 9, 2004) (Proctor, J.); <u>Allen v. Wyeth</u>, No. 04-CV-0238-T (M.D. Ala. Apr. 9, 2004) (Thompson, J.); <u>Chestnut v. Wyeth</u>, No. 04-CV-0295-T (M.D. Ala. May 3, 2004) (Thompson, J.); <u>King v. Wyeth</u>, No. 04-CV-0409-T (M.D. Ala. May 24, 2004) (Thompson, J.); <u>Culpepper v. Wyeth</u>, No. 04-CV-0411-T (M.D. Ala. May 24, 2004) (Thompson, J.); <u>Braden v. Wyeth</u>, No. 04-CV-0384-T (M.D. Ala. May 24, 2004) (Thompson, J.); <u>Cross v. Wyeth</u>, No. 03-0882-BH-M (S.D. Ala. Mar. 29, 2004) (Hand, J.); <u>Bennett v. Wyeth</u>, No. 04-CV-0416-T (M.D. Ala. June 2, 2004) (Thompson, J.).[5]

---

[5] See Exhibit "D," attached and filed with this brief.

Federal District Courts in Alabama have rightly found that plaintiffs who allege claims of fraudulent misrepresentation and suppression against sales representatives of drug companies have alleged valid claims under Alabama law.    Accordingly, the Individual Resident Defendant was not fraudulently joined in this case.

c.    **The Plaintiff's complaint was pleaded with sufficient particularity to support claims against the Individual Resident Defendants.**

Defendant Lilly also asserts that Plaintiff failed to plead her claim of fraudulent misrepresentation with particularity.    However, in her Complaint, Plaintiff sufficiently alleges that the Individual Resident Defendant fraudulently misrepresented and/or suppressed material information regarding the safety and efficacy of Zyprexa® and its harmful side effects in order to induce physicians to prescribe these drugs and to induce consumers, including Ms. Gantt, to purchase Zyprexa®.    Plaintiff further alleges that the Individual Resident Defendant misrepresented and/or suppressed the fact that Zyprexa® was not safe and that the Defendants were under a duty to communicate this information to Plaintiff, that the Individual Resident Defendant marketed, sold, supplied and/or otherwise distributed Zyprexa®, that Zyprexa® was defective and unreasonably dangerous as designed, was unreasonably dangerous due to inadequate testing, and was defective as marketed due to inadequate warnings or instructions, that the Defendants failed to warn Ms. Gantt of the dangers of Zyprexa® therapy, that the Defendants failed to provide post-marketing warnings to Ms. Gantt after she began to take the drug, and that as a direct and proximate result of the Defendants placing Zyprexa® on the market and Ms. Gantt's ingestion of Zyprexa®, Ms. Gantt suffered injuries including the onset of diabetes mellitus.    These allegations are sufficient to support the claims asserted by

Plaintiff in her Complaint; likewise, the claims are pleaded with sufficient particularity to support Plaintiff's fraud claims against the Defendants, including the Individual Resident Defendant.

To the extent the Court finds Plaintiff's Complaint deficient to satisfy the heightened pleading requirements, such a finding should not lead this Court to an automatic finding of fraudulent joinder. See Bloodsworth, 2005 WL at *11 (citing Duffin v. Honeywell Intern., Inc., 312 F. Supp. 2nd 869, 870 (N.D. Miss. 2004) ("a plaintiff should ordinarily be given an opportunity to amend their complaint to allege fraud with greater particularity, before such claims are dismissed with prejudice upon a finding of fraudulent joinder") (citing Hart v. Bayer Corp., 199 F.3d 239, 248 n. 6 (5th Cir. 2000)).

## B. Legg v. Wyeth is not controlling or dispositive of the issues in this matter.

Defendant Lilly refers to the recent decision of the United States Court of Appeals for the Eleventh Circuit, Legg v. Wyeth, 428 F.3d 1317 (11th Cir. 2005), and argues that the decision supports a denial of the Plaintiff's motion to remand. The Defendant's argument in this respect must fail.

### 1. Legg v. Wyeth is not controlling on the issue of subject matter jurisdiction and any language in Legg relative to the remand proceedings is dictum.

In Legg, the issue before the appellate court was whether the district court abused its discretion by awarding attorney's fees and costs to the plaintiffs as a result of the removal petition filed by the defendant, a drug company manufacturer, Wyeth. Contrary to the position urged by Defendant Lilly in the present cause, the issue was not whether the district court abused its discretion by remanding the case, after finding that the

defendant failed to meet its burden of establishing fraudulent joinder. Indeed, the Eleventh Circuit noted that "28 U.S.C. § 1447 (d) bars our review of a remand such as this one based upon the lack of subject matter jurisdiction," but "the statute does not 'exclude the district court's assessment of costs from appellate review.'" Legg, 428 F.3d at 1319-20 (quoting Fowler v. Safeco Ins. Co., 915 F.2d 616, 617 (11th Cir. 1990)). The Court in Legg did not state that the trial court's remand order was in error, nor did the Court rule that the standard of review in such cases should be changed.

Since the language of Legg relied upon by Defendant Lilly is not essential to the issue in that case, it is merely dictum and should not be given *stare decisis* effect by this Court. Nevertheless, assuming *arguendo* that this Court should defer to Legg on this issue, the Legg court's holding is in contravention of well-settled Alabama law, which provides that misrepresentations of material fact, even if made by mistake or innocently, constitute legal fraud. See Ala. Code § 6-5-101 (1975). See also Thomas v. Halstead, 605 So.2d 1181 (Ala. 1993). As discussed above, Alabama law is well-established that individual employees can be held liable for torts in which they participate.

The Court in Legg cites Fisher v. Comer Plantation, 772 So. 2d 455, 463 (Ala. 2000) for the proposition that "mere conduits" cannot be held liable for participating in a tort unless bad faith can be shown. Fisher, however, dealt with independent contractors. The sales representatives here were not "mere conduits" of information, but were instead an integral part of the false and fraudulent marketing and selling of Zyprexa®.

Since the Eleventh Circuit did not have within its jurisdiction the ability to address the merits of the remand order in Legg, any discussion of the merits of the district court's order remanding the case back to state court is dictum and has no legal,

precedential value.  As a result, this Court should disregard that aspect of the <u>Legg</u> decision.

>    **2.  Even if the Eleventh Circuit's substantive discussion of removal and remand proceedings in <u>Legg v. Wyeth</u> should be considered, the "evidence" before the Court in this cause is more than sufficient to establish that there is a "possibility" of recovery against the Individual Resident Defendant.**

In reaching its decision that the district court erred by awarding attorney's fees and costs to the plaintiff in <u>Legg</u>, the Eleventh Circuit considered the fact before it that the defendant submitted uncontested affidavits of the sales representatives to establish that they were not active participants in the alleged wrongdoing as set forth in the complaint.  The defendant, Wyeth, in arguing that it had wrongfully been ordered to pay attorney's fees, argued that the sales representatives were named in the plaintiff's complaint as a means of fraudulent joinder to defeat federal diversity jurisdiction.  Wyeth submitted affidavits of the three named sales representatives to establish that they did not have prior knowledge of the subject drug's propensity to increase the risk of valvular heart disease.  The plaintiffs responded to this contention by pointing to sales materials and other documents to support its claims.  The appellate court observed, however, that the sales training materials did "not contain any warning to the sales representatives that Redux may cause valvular heart disease." <u>Legg</u> at 1322.  As the court noted, the absence of such warnings reinforced the claims of the sales representatives made by them in their affidavits.

The Eleventh Circuit, in determining that Wyeth's removal efforts were "reasonable," a basis to determine whether the attorney's fees were wrongfully awarded,

appeared to be critical of the lower court's remand order, because there did not appear to be any refutation of the affidavits of the sales representatives, other than the allegations in the complaint. Such is not the case here.

In the Declarations of the Individual Resident Defendant, submitted by Defendant Lilly in this case, the Defendants contend in conclusory and self-serving fashion that they were not active participants in the wrongdoing alleged by the Plaintiff in her complaint. However, it is not the Individual Resident Defendant's contentions that bear the most attention; rather, it is the absence of a critical contention that they do not make which should be the focus of this Court's attention. Nowhere in the Declarations is it ever asserted that Mrs. McCain lacked specific knowledge about the dangerous propensities of Zyprexa, particularly with respect to the increased risk of the onset of diabetes mellitus, metabolic syndrome, and ketoacidosis prior to the time the drug was prescribed by Plaintiff's physician. Such a baseless allegation by the Individual Resident Defendant would likely amount to perjury when the facts and evidence of this case are presented to a jury.

### V.    CONCLUSION

In all of its efforts, Defendant Lilly has failed to cite any directly applicable or controlling authority and consequently it has failed in its burden of proving that there is no possibility that Plaintiff can establish a cause of action against the Resident Defendant Yolanda McCain. For the reasons outlined above, this Court lacks subject matter jurisdiction. Therefore, Plaintiff respectfully urges the Court to remand this action in its entirety to the Circuit Court of Montgomery County, Alabama.

Respectfully submitted this 9th day of June, 2006.

_____
ANDY D. BIRCHFIELD, JR. (BIR006)
E. FRANK WOODSON (WOO034)
**Attorneys for Plaintiff**

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW, METHVIN,
    PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone:  (334) 269-2343
Fax:  (334) 223-1236

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document upon the

parties as listed below by placing a copy of same in the United States Mail, first class,

postage prepaid on this the 9th day of June, 2006.

James C. Barton
Alan D. Mathis
**JOHNSTON BARTON PROCTOR & POWELL LLP**
2900 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203

**OF COUNSEL**